IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                              Case No. 13-PO-2190 WJ

GREGORY D. RAILE,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S APPEAL FROM JUDGMENT OF UNITED STATES MAGISTRATE JUDGE

In this case, Defendant appeals his conviction by a United States Magistrate Judge for violation of 41 C.F.R. § 102-74.380(b) (Willfully Destroying or Damaging Property). Having reviewed the parties' briefs and applicable law, I find that Defendant's appeal from his conviction is denied.

### BACKGROUND

On June 21, 2013 and July 26, 2013, Defendant walked up to the front glass doors of the federal courthouse in Albuquerque, New Mexico and used an aerosol can to spray a two to three inch dot in the center of the glass.[1] Based on the eyewitness testimony of two court security officers, Defendant then dropped the spray can, entered the doors and told the security officers that he wanted his day in court.

The Court heard the Defendant's case on December 17, 2009, in a bench trial before United States Magistrate Judge Karen B. Molzen. Prior to trial, the Court ordered a competency

---

[1] There is some disagreement as to whether the color of the dot sprayed on the door was white or black, *see* Doc. 28 at 4 (white dot), and Doc. 33 at 3 (black dot), but the actual color of the dot is not relevant to the issues addressed here.

examination which determined Defendant to be competent to stand trial. After the Government presented its case, counsel for the Defendant made a motion for directed verdict based on: 1) the Government's failure to present any evidence that the regulations were posted anywhere at the courthouse; and 2) its failure to present evidence that the Defendant's actions caused damaged courthouse, rather than merely defacing it. Defendant also raised the defense of necessity. The Court denied Defendant's motion and the necessity defense, and convicted Defendant of violation of 41 C.F.R. §102-74.380(b). Following a sentencing hearing in December 2013, Judge Molzen sentenced Defendant to a twelve-month term of probation, and a $10 special penalty assessment on each for a total of $20. Docs. 21 (Clerk's Min.). Judgment was initially entered on December 19, 2013 (Doc. 22), and the Court entered an Amended Judgment on January 2, 2014. Doc. 25. Defendant's Notice of Appeal was filed on January 2, 2014. Doc. 24.

At trial, Defendant stated that he hoped to change the federal drug laws by spray painting the courthouse door. Defendant has a serious medical condition which is alleviated only by medical marijuana.[2] According to the testimony presented at trial, Defendant had served in the United States Navy from 1970 through 1973 and received an honorable discharge. His Vietnam-era service entitles him to Veterans Affairs ("VA") services. Defendant has a prescription for marijuana, and reported that he started using the drug in 2004 and that he uses it every day when he has access to it, stating that it makes him "functional." However, Defendant's VA health benefits will not cover the cost, and he cannot afford the cost of purchasing the drug from local dispensaries out of pocket. Defendant did not deny that he spray painted the front doors to the courthouse, but wanted a trial in order to make his views on marijuana known. Defendant's intention was to call attention to his situation, and he contended that he was faced with the choice

---

[2] The record indicates that Defendant suffers from schizophrenia and bipolar disease.

of damaging a federal courthouse to attempt to influence federal marijuana laws, or "suffer substantial harm." Doc. 6 at 2.

## DISCUSSION

A defendant may appeal the conviction and/or the sentence imposed by a magistrate judge to a district court judge as a matter of right pursuant to 18 U.S.C. § 3402. *U.S. v. Morrisson,* 415 F.3d 1180, 1184 (10th Cir. 2005). Under Fed.R.Crim.P. 58(g)(2)(D), the scope of appeal here is the same as an appeal to the court of appeals from a judgment entered by a district judge; that is, the defendant would not be entitled to a trial de novo by a district judge. When reviewing the sufficiency of the evidence, the Court reviews whether "a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States v. DeChristopher,* 695 F.3d 1082 (10th Cir. 2012) (citing United States v. Diaz, 679 F.3d 1183, 1187 (10th Cir. 2012)). The Court reviews the denial of a necessity defense for abuse of discretion. *United States v. Patton*, 451 F.3d 615, 637 (10th Cir 2006).

Defendant appeals his conviction based on: 1) the Magistrate Judge's denial of Defendant's motion for directed verdict regarding the Government's failure to present any evidence that the regulations were posted as required by law; 2) the Magistrate Judge's denial of Defendant's motion for directed verdict regarding the government's failure to present sufficient evidence that Defendant's actions caused damage; and 3) the Magistrate Judge's denial of Mr. Defendant's defense of necessity.

**I.     The Magistrate Judge properly denied Defendant's motion for directed verdict on the issue of whether the Government was required to post the applicable regulations at the front door of the courthouse**

Defendant contends that the Magistrate Judge erred in denying his motion for directed verdict, because the Government failed to post the substantive criminal regulations prohibiting vandalism, graffiti and other damaging conduct, at the building entrance, as required under 40 U.S.C. §1315(c)(1) (formerly §318a).[3]  Defendant argues that non-compliance with § 1315 is linked to the criminal prohibitions, so that no crime is committed absent outside posting.  The Government maintains that the Magistrate Judge properly denied Defendant's motion, because the charged criminal regulation does not include a requirement that a prohibitive sign be posted, or that Defendant walk past one on his way to the front entrance.

The Court based its denial on a First Circuit case, *U.S. v. Strong,* which was an appeal from a criminal misdemeanor conviction involving the same regulation, 41 CFR §§ 102-74.380(b).  724 F.3d 51 (1st Cir. 2013).  The defendant in that case was prosecuted for losing control of his bowels and soiling federal property while waiting to go through security on the premises of the United States District Court for the District of Maine.  This incident was followed by the filing of multiple criminal charges against the defendant.   The First Circuit affirmed the district court's conclusion that posting of prohibitive signs was not a prerequisite to criminal prosecution.  *Id.* at 58.

Defendant here argues that *Strong* does not support the Court's denial of his motion for directed verdict, because *Strong* also found that 40 U.S.C. § 1315(c)(1) *did* require regulations to be conspicuously posted, and also found that the regulations *had* been conspicuously posted outside the clerk's office.  However, the *Strong* court's multiple findings are not mutually inconsistent or exclusive to the holding that posting is not part of the elements of criminal

---

[3]  Section 1315(c)(1) states in relevant part "that rules and regulations promulgated by the General Services Administration for activities on government property "shall be posted and kept posted in a conspicuous place on such property."   This statute is codified by regulation in 41 C.F.R. § 102-74.365, which states that "Federal agencies must post the notice in the Appendix [GSA sign] to this part at each public entrance to each Federal facility."

conduct in 41 CFR §§102-74.380(b), and thus evidence need not be presented on the posting issue.[4]

Instead, Defendant relies on *U.S. v. Davis,* 339 F.3d 1223, 1227-28 (10th Cir. 2003) to argue his position, claiming that Davis "relied on other cases" which have held that a conviction could not stand where the regulations were not adequately posted.  However, *Davis* referred to a District of Colorado case which stated that posting is an integral part of a prosecution under §1315, only to make the point that the rationale behind posting was to provide notice to a person coming onto the property.  *See Davis* at 1228 (citing to *U.S. v. Holdsworth,* 990 F.Supp. 1274, 1278 (D.Colo. 1998).   The court in *Davis* never came to the conclusion that failure to post could preclude criminal prosecution, but rather concluded that actual knowledge of a regulation satisfied a potential posting requirement.   The only holding in *Davis* was that actual notice could substitute for posting.  Thus, Defendant incorrectly relies on *Davis* to argue that evidence of posting is necessary to proceed with a criminal prosecution.  *See* 339 F.3d at 1227 ("Regardless of whether the regulations had to be posted, we are not precluded from affirming the district court's decision to uphold Mr. Davis' convictions.").    Because the court found that defendant had actual notice (in the form of verbal notice and warnings), the convictions stood.[5]

---

[4]   The dissent in *Strong* would have held that proper posting of the notice *was* a prerequisite to prosecuting individuals for violating the prohibitions contained in that notice. 724 F.3d at 61.  However, the point of departure for the majority and dissent in that case was whether Mr. Strong had an unfortunate accident or whether he was engaging in a willful act.  The facts set forth in the case contained a description of the kind of soiling defendant left in the rest room, which the majority found to be indicative of willful behavior.

[5]   *Davis* noted that an appellate court may affirm the rulings of the lower court "on any ground that finds support in the record, even where the lower court reached its conclusions from a different or even erroneous course of reasoning." 339 F.3d at 1227 (citing *Cayce v. Carter Oil Co.*, 618 F.2d 669, 677 (10th Cir.1980). See also V-1 Oil Co. v. Means, 94 F.3d 1420, 1423 (10th Cir.1996)).
    In its response brief, the Government fails to mention *Davis* even in passing, which is a notable omission given that Defendant attempted to give it considerable weight.   While it is clear to the Court that *Davis* did not decide whether posting is an integral part of a prosecution for violating §102-74.380, it would have been helpful for the Government to weigh in on the relevance of the case.

Defendant also challenges the Government's reliance on a recent Tenth Circuit case, *U.S. v. Baldwin,* which involved a defendant who failed to comply with the lawful direction of a federal police officer.  While the defendant was prosecuted on the basis of a different criminal regulation, the Tenth Circuit's holding is helpful to issue raised in the instant case:

> . . . nothing in the statutory or regulatory provisions seems to say that failing to comply with a police officer's lawful order or disrupting performance of a government employee's duties is criminally unlawful only if notice is posted.  The two regulations under which Mr. Baldwin was charged make no mention of posted notices.  And the posting requirement appears in distinct and separate provisions all its own.  In these circumstances, we can hardly charge the trial court with plainly erring when it failed to impose on the government the burden to prove a posted (as opposed to actual) notice in this case.

---- F.3d ----, 2014 WL 594036 (10th Cir. Colo.).  The Tenth Circuit also noted that "other circuits have refused to read the posting requirement as a prerequisite to prosecution and indeed found it irrelevant to any prosecution." *Id.* at *7 (citing to *Strong* and *U.S. v. Irby*, 269 Fed..App'x 246, 248-49 (4th Cir. 2008 (per curium).  Defendant contends that *Baldwin* is inapposite because the defendant in that case had waived the issue by failing to raise it until the appeal, and therefore the court was required to review the issue for plain error instead of considering it de novo.  The Court fails to see how a different standard of review changes the substance of the court's reasoning in *Baldwin* when it noted that the charged regulations made no reference to posted notices, and also observed other courts that have held that the posting requirement was not linked to criminal prosecution for underlying conduct.

As a result, and in the absence of published and clear Tenth Circuit authority (although *Baldwin* is certainly persuasive), it was not erroneous for the Magistrate Judge to rely on *Strong*. I also note that in *Strong,* the court commented on the practical need for posting where the defendant would have to know that what he was doing was wrong, and thus notice was effected:

> We first treat the issue of notice. Strong has admitted, as he must, that he knew that it would be wrong to spread feces around a bathroom, especially a public

6

> bathroom. He did not need notice posted on a wall to tell him that. His defense is that he did not do so, or at least did not do so intentionally, and even if he did, his conviction must fall because there was a violation of legal notice requirements. Strong argues that posting at the entrance of the building is a prerequisite for prosecution and that even if he had notice from an indoor posting of the plaque, that was not sufficient.

*U.S. v. Strong,* 724 F.3d at 55.   On a similar vein, it is almost rhetorical to ask whether the Defendant in this case really required posting to know that it was against the law to spray the front doors of a federal courthouse.   He had spray painted the front of the federal courthouse twice before, and received citations as a result.  *See* Trial Tr. (Doc. 31) at 32-33.   Defendant had certainly been on notice that his conduct violated the law.

Based on the foregoing, the Court finds that a reasonable fact finder would find Defendant guilty beyond a reasonable doubt, given the evidence and testimony presented, and taken in a light most favorable to the Government.   It was not error for the Magistrate Judge to conclude that there was no need for the Government to present evidence of posting because such evidence was not necessary to prosecute the charged offense.   Thus, the judgment of conviction stands.

**II.  The Magistrate Judge properly denied Defendant's motion for directed verdict on the issue asserted by Defendant that the Government failed to present any evidence that the Defendant's actions damaged, rather than defaced, the property**

Federal regulations do not provide a definition of damage.  Defendant argues that his conduct at most amounted to defacement, as defined under New Mexico law, and therefore was insufficient for conviction for willfully destroying or damaging property under 41 CFR §102-74.380(b).   In *U.S. v. Murtari,* 2007 WL 3046746, the defendant was charged under 41 CFR §102-74.380(b) for willfully damaging or destroying property at a New York federal courthouse by writing a message with chalk on the surface of the plaza outside the building.  The court in that case noted that the 41 CFR §102-74.380(b) prohibited only damage, and not defacement,

and looked to New York law for an appropriate definition. The court concluded that, based on a comparison to New York law, the defendant did not intend to "damage" the surface of the plaza by writing in chalk, and any intent to "deface" the property was not prohibited by the regulation.

Defendant in this case urges the same result, noting that there was no evidence by the Government regarding what measures were actually required to remove the paint from the glass doors of the courthouse, other than testimony by one of the court security officers stating that he believed a cleaning service was engaged to remove the spray paint from the doors. Defendant also argues that state law suggests that his actions comport more with defacement rather than damage, based on NMSA 1978, §30-15-1, which prohibits the intentional *damaging* of any real or personal property, while §30-15-1.1 prohibits intentionally *defacing* any real or personal property of another with materials such as spray paint.[6]

The Government contends that Defendant's conducts shows sufficient affirmative and unlawful conduct to satisfy the element of the charged crime. *Murtari* did look to New York State law, and focused on evidence of whether the surface of the plaza had been modified inn a way that decreased its value or efficiency. The court in that case recognized that the term "damage" contemplates injury or harm to property that decreases its value or involves loss of efficiency, and that only "slight" damage must be proved. *Murtari,* at *2 (citation omitted). In this case, though, it appears that the Government did present evidence relevant to whether "damage" had occurred:

- The glass doors were under cover of the portico and therefore the spray dots would be partially protected from direct weathering of the rain (when it occurs). Tr. at 12.[7]

---

[6] Section 30-15-1.1A states: "Graffiti consists of intentionally and maliciously defacing any real or personal property of another with graffiti or other inscribed material inscribed with ink, paint, spray paint, crayon, charcoal or the use of any object without the consent or reasonable ground to believe there is consent of the owner of the property."
[7] "Tr." refers to the Trial Transcript, Doc. 31.

- The medium used was a fast-drying, indoor/outdoor spray paint, which is designed to resist weathering. Id. at 11-12 (see Govt's Exs. 1-3).[8]

- The dots were at eye level, measuring about four inches, and obstructed the view of CSOs from their security post. *Id*. at 8.

- The dots had to be cleaned up promptly by the janitorial service. *Id*. at 13 & 17-18.

On cross-examination, Defendant took the position that he could have done "a lot more damage than I did." Tr. at 40. He posited that the "little circles" could be scraped off 'in five minutes with a razor blade, although you might have to go get the razor blade and come back and stuff." *Id.* The Magistrate Judge looked at the spray can, read the labeled instructions, and concluded that what Defendant had done constituted "damage" and not just "defacement" because it required someone to clean off the paint with solvent, and it would not simply erode away:

> I do have testimony that it did require someone to actually come over and clean this off, someone from the cleaning crews or some kind of contractor, but it was not something that would have just simply erode away from the rain.   I'm also looking at the can. The can talks about a lot of things on here, including that it has solvents.   I believe that the Government has accurately described that this does fall into the category of damage rather than defacement and on that basis your motion will be denied.

Tr. at 26. Reversal is proper only if no rational fact finder could have found each element of the crime beyond a reasonable doubt. *U.S. v. Tolliver,* 730 F.3d 1216, 1220 (10th Cir. 2013). In this case, the evidence supports a finding by a rational fact finder that Defendant engaged in damaging conduct, and thus, the evidence is sufficient to support Defendant's conviction.

## III.   The Magistrate Judge properly rejected Defendant's necessity defense

Finally, Defendant contends that he established the elements of a necessity defense at trial, and as a result, the Magistrate Judge improperly rejected his motion for directed verdict on

---

[8]   Unlike a food item or chalk that might just wash away with water, specialized solutions are required to clean the specific paint that was used.  Tr. at 46.

9

that basis.  The Court found that Defendant's need, which was to have the federal marijuana laws changed, did not necessitate spray painting a dot on the entrance doors on two separate occasions, which formed the basis for the charged conduct.

The three common law elements of the necessity defense are: "(1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct, causal relationship is reasonably anticipated to exist between the defendant's action and the avoidance of harm." *U.S. v. Patton*, 451 F.3d 615, 637 (10th Cir. 2006).

Defendant testified that he was faced with a choice of evils: to call attention to his situation or suffer substantial harm.  He claimed there was no real alternative to his attempt to influence federal marijuana laws because he had already attempted various other channels and because of the serious and imminent nature of the harm he was likely to suffer (the inability to utilize his VA health benefits to pay for his prescriptions for medical marijuana).  Defendant testified that, prior to spray painting the courthouse doors, he first sent a letter to a federal judge and then later came to the courthouse with marijuana.  Tr. at 32 & 48-49.  Defendant felt that these acts were unsuccessful, and he felt needed to do something more drastic.  Tr. at 36.

Defendant testified that he suffers from brain damage and risk of suicide. Id. at 8:33. He stated that he tries to direct the resulting agitation best he can. Id. at 9:45-55. Defendant further testified that he felt if the laws were not changed, the result would have been death or dementia. Id. at 10:30-10:37. He stated that, when he spray painted the door, he was experiencing anxiety and agitation from not having marijuana, and that he was trying to direct that agitation.  Tr. at 33. Defendant stated that the lack of marijuana impelled him to take action and that by spray painting the courthouse door, he avoided a greater harm, such as hurting someone else or himself.  Tr. at 41.

The Court finds that there was no abuse of discretion by the Magistrate Judge. There were other legal alternatives he could have tried, including addressing his needs to Congress by writing or meeting with his congressional representatives. Legalization of marijuana is a timely issue, and Defendant would have found support in working with various groups having the same objective. Other than writing a letter to a federal judge, and walking into the courthouse with marijuana, he had attempted no other means to call attention to his situation. Moreover, federal judges are powerless to change the nation's marijuana laws. Legislation enacted by the Congress and approved by the President is what is required to change the nation's marijuana laws.

For these reasons, Defendant's appeal on this issue is denied as well.

## CONCLUSION

In sum, the Court denies all grounds for Defendant's appeal from his judgment of conviction by a United States Magistrate Judge, and his conviction will stand.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE